IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Irvin Daniel Grove, Jr., )
    Plaintiff, )
)
v. ) 1:18cv431 (LO/JFA)
)
Dr. Rogers, et al., )
    Defendants. )

## MEMORANDUM OPINION

Irvin Daniel Grove, Jr., a Virginia inmate proceeding pro se ("Grove" or "plaintiff"), has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs in two respects at the Riverside Regional Jail ("RRJ"). The matter is presently before the Court on the unopposed Motion for Summary Judgment of defendant Dr. Onan Bomar, IV, who is alleged to have violated plaintiff's Eighth Amendment rights in connection with a nasal fracture.[1] For the reasons which follow, the Motion for Summary Judgment will be granted.

### I. Background

Plaintiff commenced this lawsuit in April, 2018, alleging that defendants at RRJ were deliberately indifferent to (1) a spinal condition and (2) a fractured nose. Dr. Bomar appears to have been named as a defendant solely in connection with the nasal fracture. In the amended complaint, which is the operative complaint in the lawsuit [Dkt. No. 3], Grove's allegations regarding the care he received from Dr. Bomar in full are as follow:

> On Tuesday, April 17, 2018 I was assulted [sic] and my nose was
> badly broken. I was taken to Medical and examined by Doctor

---

[1] Grove refers to the defendant as "Dr. Bowmar."

> Bowmar. Dr. Bowmar instructed Charge Nurse Lemons [sic] to
> call for x-ray tech to see how bad it was broken. At 1:45 pm the
> same day x-rays were done and I was sent back to my housing unit
> and told I would be sent on an emergency run to get my nose set
> once the x-ray results confirmed my nose was broken.

[Dkt. No. 3 at 8] Grove alleges that for the next several days his nose was disfigured and continued to cause him pain. He returned to the medical department and complained to Charge Nurse Lemmons and Ms. Hicks-van Haren that nothing was being done, and he was told that he would be seen by an "nose, ear and throat doctor" who might decide that it would not be best to re-break and set the nose. Id. at 9-11. Grove states that as of May 1, 2018 his nose remained untreated because the RRJ medical staff was "incompetent" and "inadequate," and he would have to endure more pain to get his nose re-broken if he wanted to have a "somewhat straight" nose and to able to "breath[e] right" again. Id. at 11.[2] He seeks an award of monetary damages for the injury alleged here.

On November 13, 2018, Dr. Bomar filed a Motion for Summary Judgment with a supporting memorandum of law and exhibits, and supplied Grove with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civ. R. 7(J). [Dkt. No. 40-41] Grove has submitted no response. Accordingly, this matter is now ripe for disposition.

## II. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] In addition to Dr. Bomar, the named defendants in the lawsuit are Nurse Lemmons, Ms. Hicks-van Haren, Patricia Rodgers, D.O., and Dr. Imhotep Carter. The bulk of Grove's allegations against those defendants center on their alleged failure to treat his spinal condition. They have jointly filed a separate Motion for Summary Judgment, to which plaintiff has responded. [Dkt. No. 33-34, 37]

2

56(a). The movant bears the initial burden of showing that there are no genuine, material factual disputes and that it is entitled to judgment based on those facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met its initial burden, the burden shifts to the non-moving party to point out the specific facts which create disputed issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational factfinder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

Pursuant to Local Civil Rule 7(K)(2), if a pro se party receives the appropriate Roseboro notice and fails to file a response within the time allotted, the Court may dismiss the action on the basis of the moving party's papers.

### III. Undisputed Facts

The following material facts are undisputed.

1. Dr. Bomar is a physician licensed to practice medicine in Virginia, and is board certified in internal medicine. He has practiced as a physician at RRJ since March 18, 2018. [Dkt. No. 41, Ex. 1, Bomar Aff. at ¶¶ 4-5]

2. Dr. Bomar first saw Grove on March 22, 2018, when he followed up on Grove's consultation with an orthopedic surgeon regarding his spinal condition. Pursuant to the surgeon's recommendation, Dr. Bomar placed an order for a lumbar spine MRI and ordered a course of Gabapentin. Id. ¶ 9.

3. As to the care Grove challenges in the Amended Complaint, Dr. Bomar assessed Grove for a nasal fracture received in an altercation with another inmate on April 17, 2018. Id.

¶10.  Dr. Bomar performed a complete physical examination and found that Grove's nose was angled to the right, without discharge or blood. Id.  The vessels within the nasal passageways were normal, and although Grove had a laceration with blood to his left ear, the ear membranes were normal. Id.  Grove's neurological examination was normal. Id.

4. Dr. Bomar assessed a nasal fracture and set out a medical plan consisting of: (1) cold packs twice a day for seven days; (2) one oral tablet of Tylenol #4; (3) a STAT x-ray of the nasal bones; (4) discontinuation of NSAIDS due to Grove's reported reaction to them; and (5) likely referral to an ear, nose and throat (ENT) physician or plastic surgeon. After reviewing Grove's x-ray which showed a fractured nose, Dr. Bomar placed a request for a consultation with an ENT on a routine priority basis. Id. ¶ 10.

5. Based upon his medical judgment and training, Dr. Bomar did not believe that a STAT/urgent ENT consultation was medically necessary. Id. ¶11.

6. Grove was referred to Dr. Bomar by Ms. Hicks-van Haren on April 25, 2018 for difficulty breathing through his left nostril. Dr. Bomar re-submitted the ENT referral request and ordered ibuprofen. Id. ¶13.

7. Grove was provided with the ENT consultation ordered by Dr. Bomar, and on May 9, 2018 he underwent a closed nasal reduction to re-set his nose by an ENT surgeon who deemed the procedure moderately successful. Id. ¶ 16. On June 7, 2018, the same ENT surgeon performed a septoplasty to correct Grove's deviated septum. Id. At a follow-up appointment on June 22, 2018, the surgeon determined that Grove's functional nasal obstruction was resolved, and that a persistent nasal bone deformity could be addressed through rhinoplasty. Because rhinoplasty is designed to improve the appearance of the nose it is a cosmetic procedure and is

not medically necessary. Id.

In addition to providing his own affidavit, Dr. Bomar expressly adopts and incorporates the factual statements set out in paragraph II(A) of the co-defendants' memorandum in support of their Motion for Judgment. That paragraph concerns the grievance procedure at RRJ, and reveals the following additional undisputed facts:[3]

8. During the time period relevant to this lawsuit, RRJ's medical department had in effect the a formal grievance procedure, which is a mechanism for inmates to grieve issues relating to jail policy, procedures, and treatment, including health complaints. [Dkt. No. 34, Ex. B, Hicks-van Haren Aff. ¶¶ 1-2]

9. When an RRJ inmate files a grievance regarding his medical care it is forwarded to Pamela Hicks-van Haren, the Health Services Administrator at RRJ. Id. ¶¶ 2, 10. Ms. Hicks-van Haren, the Director of Nursing, or a designee will investigate the complaint and provide the inmate with a written grievance response within seven (7) business days. Id. ¶ 11. If the inmate is dissatisfied he may appeal the response to his grievance, and the grievance process is not complete unless he does so. Id. ¶¶ 5-6.

10. On April 18, 2018, Grove filed a grievance with respect to his broken nose. Id. ¶ 23. Hicks-van Haren responded on April 25, 2018 that she had met with Grove and he had been referred to an ENT specialist, but the process of scheduling outside medical appointments took time.

11. On May 2, 2018, Grove appealed the response to his grievance. He received a

---

[3] While Grove has submitted a sworn opposition to the codefendants' Motion for Summary Judgment, he takes no issue with their description of the grievance process set out here.

response to his grievance appeal on May 17, 2018, "thereby exhausting the grievance process." Id. ¶ 23.

## IV. Analysis

A. <u>Administrative Exhaustion</u>

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Based upon his codefendants' Memorandum of Law and supporting exhibits, Dr. Bomar argues that Grove failed to exhaust administrative remedies as to his nose fracture prior to

6

bringing this lawsuit. [Dkt. No. 41, Bomar Mem. at 9] In fact, however, Health Services Administrator Hicks-van Haren attests that Grove "exhaust[ed] the grievance process" with the respect to the treatment of the nasal fracture, the injury upon which the claim against Dr. Bomar is predicated. [Dkt. No. 34, Ex. B, Hicks-van Haren Aff. ¶ 23] The claim against Dr. Bomar therefore cannot be dismissed based upon lack of administrative exhaustion.

B. Deliberate Indifference

Nonetheless, Grove's claim against Dr. Bomar fails on the merits. To establish an Eighth Amendment claim for denial of medical care, a plaintiff must show that jail officials were deliberately indifferent to a serious medical need by proving two distinct elements. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). First, he must show that he suffered from a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must establish that the defendant was deliberately indifferent to that serious medical need "by either actual intent or reckless disregard," Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); that is, that the defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Under this second prong, mere negligence or even malpractice is not enough to state an Eighth Amendment violation, nor will a prisoner's disagreement with medical personnel over the course of his treatment support such a claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

It requires little discussion to conclude that Dr. Bomar was not deliberately indifferent to the serious medical need posed by Grove's broken nose.[4] The undisputed evidence before the Court establishes that when Grove presented with the injury, Dr. Bomar completed a full physical examination and an assessment of Grove's condition. Dr. Bomar further put into place a treatment plan that included symptomatic pain medication, diagnostic testing, and eventual referral to an outside specialist who performed two procedures on Grove's fractured nose that resolved his functional nasal obstruction. Clearly, Dr. Bomar was not deliberately indifferent to Grove's broken nose by either actual intent or reckless disregard, cf. Estelle, 429 U.S. at 106, and instead provided prompt and thorough care. To the extent that Grove takes issue with the fact that Dr. Bomar ordered a routine rather than an emergency consultation and believes that he should be provided with rhinoplasty, such arguments amount to nothing more than disagreements with Dr. Bomar over the proper course of treatment and do not indicate or establish deliberate indifference. Wright, 766 F.2d at 849.

## V. Conclusion

For the foregoing reasons, Dr. Bomar's Motion for Summary Judgment will be granted. An appropriate Order and Judgment shall issue.

Entered this 23rd day of April 2019.

/s/
Liam O'Grady
United States District Judge

Alexandria, Virginia

---

[4] Dr. Bomar expressly acknowledges that Grove's fractured nose was objectively a serious medical need. Bomar Mem. at 9, n. 2.

8